1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9

10    AMY TAYLOR,                                    CASE NO. C19-1761 MJP

11                      Plaintiff,                   ORDER DENYING
                                                     DEFENDANTS' MOTION FOR
12            v.                                     SUMMARY JUDGMENT

13    HARVEY C. HARBAUGH et al.,

14                      Defendants.

15

16          This matter comes before the Court upon Defendants' Motion for Summary Judgment.

17    (Dkt No. 10).  Having reviewed the motion, the response (Dkt. No. 13), the reply (Dkt. No. 14),

18    and all related papers, the Court DENIES the motion.

19                                      **Background**

20          1.  <u>Lease Agreement</u>

21          On October 15, 2015 Plaintiff, Amy Taylor, and her now ex-husband, Garry Taylor,

22    purchased a mobile home on a lot within Carriage Estates MH55+, LLC, a senior mobile home

23    community owned and operated by Defendants Patricia and Harvey Harbaugh.  (Dkt. No. 1, Ex.

24

2 ("Compl."), ¶¶ 9, 11); Dkt. No. 4 ("Ans."), ¶ 9; Dkt. No. 11, Declaration of Patricia Harbaugh ("P. Harbaugh Decl."), ¶¶ 2-3.)

At the time the Taylors signed the lease, they were provided with a copy of the Carriage Estates' rules, which included Rule No. 1:

> Each lot must have at least one person 55 or older unless written approval from management is given and all residents must be at least forty (40) years old.

(A. Taylor Decl., ¶ 3; P. Harbaugh Decl., Ex. 7 at 48.)  Residents were permitted to have guests stay on park property overnight for 15 consecutive days with approval from management.  (P. Harbaugh Decl., Ex. 7 at 55.)   The lease also permitted Plaintiff, who has multiple sclerosis and several other disabling health conditions, to have a service dog.  (Dkt. No. 13, Ex. 2, Declaration of Amy Taylor ("A. Taylor Decl."), ¶¶ 2, 6.)

When they moved into Carriage Estates, the Taylors were the legal guardians of their grandson, Ethan Farrington, who was sixteen years old.  (Id., ¶ 3.) They had assigned physical custody of Mr. Farrington to his mother, Melinda Taylor, who he was living with at the time. (Id.; Dkt. No. 13, Ex. 3, Declaration of Melinda Taylor ("M. Taylor Decl."), ¶ 2.)  Plaintiff admits that while her grandson did not live with her, "he did visit frequently and at times would stay for a night or two."  (A. Taylor Decl. ¶ 4; Dkt. No. 13, Ex. 1, Declaration of Garry Taylor ("G. Taylor Decl."), ¶ 3.)  But his belongings remained at his mother's home and in the fall of 2016, he began school in Arizona.  (M. Taylor Decl., ¶ 3.)

2.  Complaints

On July 12, 2017, the Taylors received a letter from Ms. Harbaugh.  (Id.; P. Harbaugh Decl., Ex. 5.)  The letter informed the Taylors that "[t]here has been some disruptive behavior at your location brought to our attention by other residents."  (P. Harbaugh Decl., Ex. 5.)  The listed behaviors included "[l]ate night activities," "dogs that exit at will from doggie door barking,"

and "Mr. Taylor well into the night laying by driveway apparently inebriated calling for help." (Id.)  According to Plaintiff, these items "were all things the park manager had mentioned to us earlier, and that we had already addressed."  (A. Taylor Decl. ¶ 5.)  But the letter also noted that:

> Grandson came late at night with a wrecker towing the truck he drives . . . . Is this grandson staying with you? It's been noted that grandson comes late at night at various intervals . . . . If he is staying with you, you have been notified that he is not old enough to live in Carriage Estates since it is a 55 and older community.

(P. Harbaugh Decl., Ex. 5.)

Defendants have submitted eight complaints from Plaintiff's next-door neighbors, the Biggerstaffs; only two appear to refer to Mr. Farrington.  (See P. Harbaugh Decl., Ex. 3 at 22-29.)  In one, the Biggerstaffs complain that "the young man with the blue car was working on it jacking it up and scraping something across the driveway at 10:30 going on to 11:30." (Id. at 22.)  Gerry Taylor contends that Mr. Farrington could not have worked on his car at night because the Taylors' lacked outdoor lighting.  (G. Taylor Decl., ¶ 4.)  The Biggerstaffs also complained that they were awakened by a flatbed truck being towed to the Taylors' property.  (P. Harbaugh Decl., Ex. 3 at 24.)  When Mr. Biggerstaff confronted Mr. Farrington about the truck, asking if he lives there, Mr. Farrington said no "but the truck belongs to the people who live there."  (Id.)

   3.   Mr. Farrington as Caretaker

By the early fall of 2017 Plaintiff concluded that she would need a caregiver to help her prepare meals, use the toilet, shower, and help her when she falls.  (A. Taylor Decl., ¶ 7.)  Mr. Farrington had assisted Plaintiff in the past and had experience taking care of his father, who was paralyzed.  (Id.; M. Taylor Decl., ¶ 5.)  Mr. Farrington began providing care to Plaintiff in September 2017.  (A. Taylor Decl., ¶ 8.)  Plaintiff asserts that "Ethan had a job, and was living with his mother at this time" but was with Plaintiff when he was not working, "primarily at night

1   and in the early morning."  (Id. ¶ 10.)  Ms. Harbaugh, on the other hand, alleges that on October

2   9, 2017 "Ms. Taylor finally admitted [] that Mr. Farrington had been living with her."  (P.

3   Harbaugh Decl., ¶ 13.)

4           In late September 2017, Gerry Taylor notified Carriage Estates that Mr. Farrington would

5   be providing care to Plaintiff at home.  (Id., ¶ 11; P. Harbaugh Decl., Ex. 5 at 36.)  In a letter

6   confirming the conversation, Ms. Harbaugh wrote:

7           [G]randson is not authorized to live at Carriage Estates until all requirements of
            Caregiver have been completed . . . If he chooses to ignore park rules and live in
8           the park before caregiver approval, he could jeopardize his acceptance to live in
            park as a caregiver. His prior history in park would be considered for approval.
9           Mrs. Taylor said if grandson doesn't abide by rules and repeats past problems
            such as nighttime disturbances to other tenants, she would have him leave park.
10
    (P. Harbaugh Decl., Ex. 5 at 36.)
11
            On October 11, 2017 Mr. Farrington submitted what Ms. Harbaugh describes as a
12
    "partially completed application" to be Plaintiff's caregiver.  (Id., ¶ 15.)  Ms. Harbaugh alleges
13
    that Mr. Farrington "erroneously claimed on the application that he was living elsewhere."  (Id.)
14
    On November 13, 2017 Plaintiff received a letter from Defendants stating that Mr. Farrington's
15
    application "for tenancy" was rejected based on "information contained in a consumer credit
16
    report."  (A. Taylor Decl., Ex. 6 at 20.)
17
        4.  Threatened Evictions
18
            On November 27, 2017 the park manager handed Plaintiff a document entitled "3-day
19
    Notice to Quit" that was addressed to Mr. Farrington.  (A. Taylor Decl., ¶ 18.)  The Notice
20
    asserted that the Taylors had transferred their lease without the approval of Carriage Estates,
21
    when they claim they "had done no such thing."  (Id.)  On Friday, December 15, 2017, the park
22
    manager appeared with another "3-day Notice to Quit."  (Id. ¶ 19.)  The Notice was addressed to
23
    the Taylors and Mr. Farrington.  (Id.)  Plaintiff "was very upset after having received the notice
24

1  to quit, directing [her] to abandon [her] home on short notice . . . . The threat and fear of being

2  cast out onto the streets was overwhelming." (Id. ¶ 20.) Ms. Harbaugh claims the notices were

3  "a last ditch effort to get [the Taylors'] attention" and "[i]t was never [her] intention to actually

4  evict the Taylors; [she] only wanted them to follow the rules." (P. Harbaugh Decl., ¶ 19.) For

5  this reason, "[she] ultimately withdrew the notice and never undertook any serious effort to evict

6  them." (Id.)

7       On May 28, 2019, the Taylors sold their home to Defendants Harvey and Patricia

8  Harbaugh for $17,500 after purchasing the home in October 2015 for $56,000. (Thomas Decl., ¶

9  9; P. Harbaugh Decl., ¶ 20.) The Harbaughs sold the mobile home for $85,000 on October 2,

10  2019. (Thomas Decl., ¶ 9.)

11     5.  Legal Action

12       On September 11, 2019 Plaintiff filed suit against Harvey and Patricia Harbaugh and

13  Carriage Estates MH 55+ LLC in Skagit County Superior Court, alleging violations of the Fair

14  Housing Act ("FHA") and the Washington Law Against Discrimination ("WLAD") based on her

15  allegations that Defendants discriminated against her based on her disability, refused to

16  reasonably accommodate her, and retaliated against her for requesting a reasonable

17  accommodation. 42 U.S.C. §§ 3604(f)(1)-(3), 3617; 49.60 RCW. Defendants removed the

18  action to this Court on October 30, 2019. (Dkt. No. 1.)

19                                      **Discussion**

20  **I.   Legal Standard**

21       Summary judgment is proper where "the movant shows that there is no genuine dispute

22  as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

23  56(a). The movant bears the initial burden of demonstrating the absence of a genuine issue of

24

1   fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In assessing whether a party has met

2   its burden, the underlying evidence must be viewed in the light most favorable to the non-

3   movant.  Matsuhisa Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

4       **II.**    **Defendants' Motion for Summary Judgment**

5       Defendants seek summary judgment, alleging that Plaintiff cannot establish a prima facie

6   case of disparate treatment or demonstrate that Defendants failed to make a reasonable

7   accommodation.[1] (Dkt. No. 10.)

8       **A.  Disparate Treatment**

9       In the Ninth Circuit, disparate treatment claims brought pursuant to the FHA are analyzed

10  under Title VII's three-stage McDonnell Douglas/Burdine test.  Gamble v. City of Escondido,

11  104 F.3d 300, 305 (9th Cir. 1997).  Alternatively, Plaintiff can establish a prima facie case by

12  "'simply produc[ing] direct or circumstantial evidence demonstrating that a discriminatory

13  reason more likely than not motivated' the defendant and that the defendant's actions adversely

14  affected the plaintiff in some way." Pac. Shores Properties, LLC v. City of Newport Beach, 730

15  F.3d 1142, 1158 (9th Cir. 2013) (quoting McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1122

16  (9th Cir.2004)).

17      While the Parties appear to agree that the McDonnell Douglass framework should be

18  applied to Plaintiff's disparate treatment claim (Dkt. No. 10 at 8; Dkt. No. 13 at 13), Plaintiff has

19  failed to provide evidence of a similarly situated tenant who was granted an accommodation, an

20  essential element of the test.  Plaintiff contends that another tenant was permitted to stay on the

21  property after her husband died, but this tenant was over 40 years-old, the minimum age set forth

22

23  [1] While Defendants seek summary judgment dismissal of this action, they make no arguments regarding Plaintiff's
    retaliation claim and therefore have not met their burden of demonstrating the absence of a genuine issue of fact as
24  to that claim.  Celotex, 477 U.S. at 323.

in the lease, while Mr. Farrington was well outside the bounds of this rule.  (A. Taylor Decl., ¶ 3;

P. Harbaugh Decl., Ex. 7 at 48.)  This is therefore not evidence of a similarly situated tenant.

However, the Ninth Circuit has held that "plaintiffs who allege disparate treatment under

statutory anti-discrimination laws need not demonstrate the existence of a similarly situated

entity who or which was treated better than the plaintiffs in order to prevail." Pac. Shores Props.,

730 F.3d at 1158.  A plaintiff must "'simply produce direct or circumstantial evidence

demonstrating that a discriminatory reason more likely that not motivated' the defendant and that

the defendant's actions adversely affected the plaintiff in some way." Pac. Shores Props., 730

F.3d at 1158 (quoting McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1122 (9th Cir.2004)).  "The

court analyzes whether a discriminatory purpose motivated the defendant by examining the

events leading up to the challenged decision and the legislative history behind it, the defendant's

departure from normal procedures or substantive conclusions, and the historical background of

the decision and whether it creates a disparate impact." Ave. 6E Investments, LLC v. City of

Yuma, Ariz., 818 F.3d 493, 504 (9th Cir. 2016) (citation omitted).  "These elements are

non-exhaustive, and a plaintiff need not establish any particular element in order to prevail." Id.

Here, instead of providing Mr. Farrington with a caregiver application, Defendants gave

him an application for tenancy that was declined based on his credit history, a factor that is

irrelevant to any of Defendants' arguments for why Ethan could not be a caregiver, e.g. his age

and past behavior. And although Defendants argue that Ethan "was a waking nightmare to Ms.

Taylor's neighbors and to Carriage Estates personnel who had to constantly endure this cycle of

violations, lies, inaction, and more violations," it was not until after Plaintiff disclosed her

disability that Defendants threatened to evict her.  (Dkt. No. 10 at 10.)

1  Plaintiff has therefore produced sufficient evidence that Defendants "departed from

2  normal procedures or substantive conclusions" Ave. 6E Investments, 818 F.3d at 504, and has

3  established an indication of discriminatory motive" that "suffice[s] to raise a question that can

4  only be resolved by a factfinder" Pac. Shores Props., 730 F.3d at 1156.

5  **B.  Reasonable Accommodation**

6  To prevail on a claim based on a failure to make a reasonable accommodation, a plaintiff

7  must prove all of the following elements: (1) that the plaintiff or his associate is handicapped

8  within the meaning of 42 U.S.C. § 3602(h); (2) that the defendant knew or should reasonably be

9  expected to know of the handicap; (3) that accommodation of the handicap may be necessary to

10 afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) that the

11 accommodation is reasonable; and (5) that defendant refused to make the requested

12 accommodation.  Dubois v. Ass'n of Apartment Owners of 2987 Kalakaua, 453 F.3d 1175, 1179

13 (9th Cir. 2006).

14 Here, it is uncontested that Defendants were aware of Plaintiff's handicap at the time Mr.

15 Farrington applied to be Plaintiff's caregiver, thereby satisfying the first two elements. (See Dkt.

16 No. 10 at 8-9; Dkt. No. 13 at 20.)  Defendants also appear to acknowledge that Plaintiff required

17 a caregiver (Dkt. No. 10 at 11 ("Ms. Harbaugh made it clear to Ms. Taylor Defendants stood

18 ready to accommodate any reasonable caregiver option in existence.  Ms. Taylor has no evidence

19 to suggest this was not in earnest.").)  And Defendants denied Plaintiff's requested

20 accommodation to allow Ethan to serve as Plaintiff's caregiver.  (See Dkt. No. 10 at 11.)  The

21 fourth element—whether Plaintiff's requested accommodation was reasonable—remains in

22 dispute.

23

24

1   Defendants argue that Ethan was not a reasonable option for a caregiver because his

2   application was inadequate and he had a history of rule violations.  (Dkt. No. 10 at 11.)  Both

3   assertions rely on disputed facts.  First, Defendants contend Mr. Farrington falsely declared he

4   was living elsewhere on his application when Plaintiff confessed on October 9, 2017 that Ethan

5   had been living with her as a caregiver.  (P. Harbaugh Decl., ¶ 13.)  But Plaintiff asserts "Ethan

6   had a job, and was living with his mother at this time," and was only with Plaintiff when he was

7   not working, "primarily at night and in the early morning."  (A. Taylor Decl., ¶¶ 8-10.)

8   Mr. Farrington's alleged history of rule breaking is also disputed.  (P. Harbaugh Decl.,

9   Ex. 3 at 22-24; G. Taylor Decl., ¶ 4.)  Further, Defendants' arguments concerning Mr.

10   Farrington's alleged rule violations are undercut by their proposal that Plaintiff's daughter would

11   have been a more appropriate caregiver, because she did not have Ethan's "attendant baggage."

12   (Dkt. No. 14 at 7.)  The record shows that the Biggerstaffs also complained about Plaintiff's

13   daughter.  (See P. Harbaugh Decl., Ex. 3 at 23.)  Further, Mr. Farrington's "attendant

14   baggage"—his "bad acts and rule violations"—were not cited in the letter denying his

15   application, instead he was denied based on his credit history.

16   Beyond these contested issues, Defendants have failed to demonstrate that the requested

17   accommodation would have imposed a "fundamental alteration in the nature of the program or

18   undue financial or administrative burdens."  Giebeler v. M & B Assocs., 343 F.3d 1143, 1157

19   (9th Cir. 2003) (citations and quotation marks omitted).  Defendants instead assert that they

20   "stood ready to accommodate any reasonable caregiver option in existence."  (Dkt. No. 10 at 11.)

21   But they fail to acknowledge the "affirmative duty upon landlords to reasonably [] accommodate

22   the needs of handicapped persons,' not only with regard to the physical accommodations, but

23   also with regard to the administrative policies governing rentals."  Giebeler, 343 F.3d at 1146-47

24

1   (quoting United States v. California Mobile Home Park Mgmt. Co., 29 F.3d 1413, 1416 (9th

2   Cir.1994); citing 42 U.S.C. § 3604(f)(3)(A) & (C)).  Defendants have failed to demonstrate that

3   the requested accommodation was unreasonable and have not put forth any evidence that they

4   satisfied their affirmative duty to reasonably accommodate Plaintiff.

5   **I.    Defendants' Motion to Strike**

6        Defendants also move to strike statements in the Declarations of Plaintiff, Plaintiff's

7   ex-husband Garry Taylor, and Plaintiff's daughter, Melinda Taylor, which were submitted in

8   support of Plaintiff's response brief.  The Court GRANTS in part Defendants' motion and

9   STRIKES the following statements as impermissible hearsay:

10       (1) "Later, Mr. Hastings mentioned that he had received complaints from our neighbors,

11            Ron and Eileen Biggerstaff, but Mr. Hastings told me that the Biggerstaffs

12            complained about everything." (A. Taylor Decl., ¶ 5);

13       (2) "I had researched what public assistance might be available to pay for a care provider

14            and discovered that because my ex-husband and I were receiving assistance for our

15            disabilities, additional assistance would not be available."  (Id., ¶ 9);

16       (3)  "My ex-husband, Garry, notified Carriage Estates in late September 2017, that Ethan

17            would be providing care to me at home for the reasons discussed above."  (Id., ¶ 11);

18       (4) "I understand Ethan's experience with his father is one of the reasons that my mother

19            later asked him to help care for her."  (M. Taylor Decl., ¶ 5.)

20   In addition, the following statement is STRICKEN as speculative or unfounded:

21       (1) "Mr. and Ms. Hastings had seen me use my walker on the rare occasions when I was

22            outside my home." (A. Taylor Decl., ¶ 6.)

23

24

1    (2) "The compensation we paid to Ethan was much less than a private care provider

2         would have demanded."  (Id., ¶ 9);

3    The remainder of Defendants' Motion to Strike is DENIED.

4    **II.    Plaintiff's Motion for Sanctions**

5         Plaintiff moves for sanctions pursuant to Federal Rule of Civil Procedure 37(b) and (c),

6    based on Ms. Harbaugh's admission that she had taken notes of oral complaints against the

7    Taylors by Carriage Estates' residents other than the Biggerstaffs, but "put them in a format and

8    threw all that stuff away" without keeping any copies.  (Dkt. No. 13 at 14; Thomas Decl., ¶ 6,

9    Ex. 2 at 25:25-26:11.)  Plaintiff also alleges that Mr. Farrington's background screening report

10   was three pages but Defendants only produced two pages during discovery.  (Dkt. No. 13 at 15.)

11   Defendants counter that their motion is based only on the complaints from the Biggerstaffs that

12   were produced in discovery and the last page from the criminal screening report was blank, so

13   there was nothing to produce.  (Dkt. No. 14 at 8.)

14        The allegedly destroyed or missing evidence was not cited by the Defendants and

15   Plaintiff has not made a showing that additional neighbor complaints or information about Mr.

16   Farrington's criminal background check would be helpful to her case.  Plaintiff's motion for

17   sanctions is DENIED.

18                                **Conclusion**

19        In sum, Defendants' Motion for Summary Judgment (Dkt. No. 10) is DENIED;

20   Defendants' Motion to Strike (Dkt. No. 14 at 1-3) is GRANTED in part DENIED in part, and;

21   Plaintiff's Motion for Sanctions (Dkt. No. 13 at 14-16) is DENIED.

22   //

23   //

24   //

The clerk is ordered to provide copies of this order to all counsel.

Dated February 16, 2021.

Marsha J. Pechman
United States Senior District Judge