1

2                                                    **THE HONORABLE MARSHA J. PECHMAN**

3

4

5

6                                    UNITED STATES DISTRICT COURT
7                                   WESTERN DISTRICT OF WASHINGTON
                                             AT SEATTLE
8

9        AMY TAYLOR,

10                   Plaintiff,

11                       v.                          Case No.  2:19-cv-01761-MJP

12       HARVEY C. HARBAUGH AND                      **PLAINTIFF'S TRIAL BRIEF**
         PATRICIA M. HARBAUGH, AND THE
13       MARITAL COMMUNITY COMPOSED
         THEREOF; AND CARRIAGE ESTATES
14       MH 55 + LLC;

15                   Defendants.

16

17

18

19

20

21

22

23

24

25

PLAINTIFF'S TRIAL BRIEF - Page 1 (2:19-cv-01761-MJP)          <u>Thomas Law Group, Inc.</u>
                                                              431 Sioux Dr., Ste. "A"
                                                              Mount Vernon WA 98273
                                                              (360) 990-8350
                                                              scott@scottgthomaslaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................3

I. INTRODUCTION ........................................................................................5

II. STATEMENT OF CASE .............................................................................7

III. EVIDENCE EXPECTED AT TRIAL ........................................................8

      A.      Case Background ............................................................8

      B.      Amy Taylor's Disability ...............................................8

      C.      Mr. Farrington Selected as Caregiver .........................9

      D.      Amy Taylor's Efforts to Have Mr. Farrington Approved by Defendants ..............9

      E.      Defendant's Rejection of Mr. Farrington ....................10

      F.      The Eviction Notices ....................................................10

IV. ARGUMENT ...............................................................................................11

      A.      The Conduct That Plaintiff Was Subjected to Establishes A Violation of the Fair Housing Act and the Washington Law Against Discrimination ...........................11

      B.      Plaintiff Will Prove that Defendants Refused To Make a Reasonable Accommodation ..............................................12

      C.      Plaintiff Will Prevail In Her Claim of Retaliation .................................14

V. DAMAGES ...................................................................................................15

CONCLUSION ...................................................................................................16

PLAINTIFF'S TRIAL BRIEF - Page 2 (2:19-cv-01761-MJP)

Thomas Law Group, Inc.
431 Sioux Dr., Ste. "A"
Mount Vernon WA 98273
(360) 990-8350
scott@scottgthomaslaw.com

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Ave. 6E Investments, LLC v. City of Yuma, Ariz.,*

   818 F.3d 493 (9th Cir. 2016) ...................................................................12

*Courtney v. City of New York,*

   20 F. Supp. 2d 655, 661 (S.D.N.Y. 1998) ...........................................16

*Dubois v. Association of Apartment Owners of 2987 Kalakaua,*

   453 F.3d 1175 (9th Cir. 2006) ...............................................................13

*Giebeler v. M & B Associates,*

   343 F.3d 1143 (9th Cir. 2003) ...............................................................13

*Hidden Village LLC v. City of Lakewood, Ohio,*

   734 F.3d 519, 528–29 (6th Cir. 2013) ..................................................14

*Jankowski Lee & Associates v. Cisneros,*

   91 F.3d 891 (7th Cir. 1996) ...................................................................14

*McGinest v. GTE Serv. Corp.,*

   360 F.3d 1103 (9th Cir. 2004) ...............................................................11

*Pacific Shores Properties v. City of Newport Beach,*

   730 F.3d 1142 (9th Cir. 2013) ...............................................................11

*Robinson v. 12 Lofts Realty, Inc.,*

   610 F.2d 1032  (2d Cir. 1979) ...............................................................11

*Silver Sage Partners, LTD v. City of Desert Hot Springs,*

PLAINTIFF'S TRIAL BRIEF - Page 3 (2:19-cv-01761-MJP)

Thomas Law Group, Inc.
431 Sioux Dr., Ste. "A"
Mount Vernon WA 98273
(360) 990-8350
scott@scottgthomaslaw.com

251 F.3d 814, 824 (9th Cir. 2001) ..............................................................15

*Simeonoff v. Hiner*,

249 F.3d 883, 893 (9th Cir. 2001) ..............................................................15

*Walker v. City of Lakewood*,

272 F.3d 1114 (9th Cir. 2001) ...................................................................14

*United States v. City of Hayward*

36 F.3d 832, 839 (9th Cir. 1994) ..............................................................15

**STATUTES and ADMINISTRATIVE REGULATIONS**

H. R. Rep. No. 711, 100th Cong., 2nd Sess .................................................5

42 U.S.C. § 3601 ...........................................................................................5

42 U.S.C. § 3604(f)(1) ...................................................................................7

42 U.S.C. § 3604(f)(3) ...................................................................................8

42 U.S.C. § 3604(f)(2) ...................................................................................8

42 U.S.C. § 3604(f)(1)(A) ............................................................................12

42 U.S.C. § 3604(f)(3)(B) ............................................................................12

42 U.S.C. § 3613 .........................................................................................11

42 U.S.C. § 3617 ......................................................................................8, 14

24 C.F.R. § 100.204 ...............................................................................12-13

24 CFR § 100.600(a)(2)(i) ...........................................................................14

Fed. R. Civ. P., Rule 54 (b)(2) ...................................................................15

Thomas Law Group, Inc.
431 Sioux Dr., Ste. "A"
Mount Vernon WA 98273
(360) 990-8350
scott@scottgthomaslaw.com

## I.  INTRODUCTION

Because people with disabilities have special needs, Congress realized that more than a mere prohibition against disparate treatment was necessary in order that the disabled receive equal housing opportunities. H. R. Rep. No. 711, 100th Cong., 2nd Sess. 25, reprinted in 1988 U. S. Code Cong. and Admin. News, 2186.  Congress recognized that the disabled were subject not only to outright invidious discrimination, but also the failure of landlords to take affirmative steps to ensure that disabled people are able to enjoy housing opportunities to the same extent as non-disabled individuals. *Id*.  Amendments to the Fair Housing Act prohibiting discrimination were thus drafted to reflect Congressional goals to combat discriminatory practices.

This case involves claims of housing discrimination and retaliation and arises under state and federal civil rights statutes: (1) Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Amendments Act of 1988 ("Fair Housing Act," or "FHA"), 42 U.S.C. § 3601, et. seq., which prohibits discriminatory practices that make housing unavailable to disabled individuals; and (2) the Washington Law Against Discrimination, Chapter 49.60 RCW, which also protects the rights of individuals with disabilities and is interpreted consistently with the FHA.  The Plaintiff, Amy Taylor, is a 67-year-old woman. She has been diagnosed with Multiple Sclerosis and is mobility impaired.  Harvey and Patricia Harbaugh own and operate a mobile home park, Carriage Estates, where Ms. Taylor and her then-husband, Garry Taylor leased a space for their mobile home.  Carriage Estates is an "adult" community, in which tenants must be at least 40 years of age.

Two years after the Taylors had moved into Carriage Estates, Amy Taylor's health had declined such that she required assistance, particularly at night.  Garry Taylor had his own health

PLAINTIFF'S TRIAL BRIEF - Page 5 (2:19-cv-01761-MJP)

issues and could no longer care for Amy.  The Taylors informed Carriage Estates of Amy's decision to have her grandson, Ethan Farrington, provide care.  Ethan was an ideal choice: he lived nearby with his mom, he had provided care to his invalid father, and he had also provided care to Amy on occasion in the past.  Amy's physician wrote a note stating that Amy needed Ethan to serve as her caregiver and the note was provided to Carriage Estates.  In sum, Amy trusted Ethan and felt that he was the perfect choice.  The Defendants, however, thought otherwise.

The Taylors' lived immediately next to Eileen and Ron Biggerstaff, who had previously complained that the Taylors were noisy.  Defendants claimed that Mr. Farrington was responsible for numerous violations of Carriage Estates' community rules, including violating Carriage Estate's minimum age requirements when Mr. Farrington began to provide care to Ms. Taylor.  To be clear, Defendants denied Ms. Taylor access to the caregiver that she had selected, and that had been approved by her physician.  Moreover, Defendants made several demands including paying to have Ethan screened as though he was applying to be a tenant (he was not) and demanding that Ms. Taylor provide Defendants with her plan of care that had been developed by her doctor, which included protected health information.  Ms. Taylor did so, relinquishing her privacy and allowing access to medical information reflected in her care plan.

A month later, after the Taylors had satisfied all of the Defendants requests, the Defendants rejected Mr. Farrington as a caregiver based on a financial credit report; again, Mr. Farrington would not be responsible for any of the Taylor's financial obligations under their lease.  The next month, just after the Thanksgiving holiday, Defendants served the Taylors with a notice demanding that the Taylors remove their mobile home from Carriage Estates within 3

Thomas Law Group, Inc.
431 Sioux Dr., Ste. "A"
Mount Vernon WA 98273
(360) 990-8350
scott@scottgthomaslaw.com

days.  A second demand was served just before the Christmas holiday.  Complying with the notice would require the Taylors to abandon their home, because it would take much longer to move the home out of Carriage Estates.

Consistent with the relevant jury instructions, at trial Ms. Taylor will prove that the defendants discriminated against her because of her disability; that the Defendants failed to afford Ms. Taylor a reasonable accommodation in the form of a modification to the community rules allowing Mr. Farrington to serve as Ms. Taylor's caregiver; and that Defendants retaliated against Ms. Taylor for seeking a caregiver and filing a charge with the Washington Human Rights Commission.

Ms. Taylor will prove economic losses in excess of $67,000 stemming from the sale of her home to the Plaintiff, and she will prove non-medical damages as outlined in relevant jury instructions for Defendant's wrongful conduct, including stress, loss of enjoyment of life, humiliation, pain and suffering, personal indignity, embarrassment, fear, anxiety, and anguish.

## II.  STATEMENT OF CASE

On September 11, 2019 Ms. Taylor filed the instant lawsuit against Harvey and Patricia Harbaugh and Carriage Estates MH 55+ LLC in the Skagit County Superior Court, alleging violations of the Fair Housing Act ("FHA") and the Washington Law Against Discrimination ("WLAD").  Defendants removed the action to this Court on October 30, 2019.  Dkt. No. 1. Defendants moved for summary judgment, which was denied on February 16, 2021.  Dkt. No. 17. The case is now set for trial beginning April 12, 2021.  Dkt. No. 9.

In her complaint Ms. Taylor alleged that Defendants had (1) discriminated against her because of her disability in violation of 42 U.S.C. § 3604(f)(1); (2) refused to make reasonable accommodations in defendants' rules, practices, or policies, which accommodation was

PLAINTIFF'S TRIAL BRIEF - Page 7 (2:19-cv-01761-MJP)

necessary to allow Ms. Taylor to use her dwelling, in violation of 42 U.S.C. § 3604(f)(3); and (3)

coerced, intimidated, threatened, or interfered with her enjoyment of the right to housing in

violation of 42 U.S.C. § 3617.  Complaint, Dkt. 1-1.  Ms. Taylor brought the same claims

pursuant to the WLAD.  *Id*.  Ms. Taylor has elected not to proceed with her allegation that

Defendants discriminated in the terms, conditions, or privileges of renting a dwelling unit in

violation of 42 U.S.C. § 3604(f)(2) and the WLAD.

### III.  EXPECTED EVIDENCE AT TRIAL

**A.      Case Background.**

Carriage Estates is owned and operated by Defendants Patricia and Harvey Harbaugh.

The Harbaughs and Carriage Estates employed Thomas and Leta Hastings to serve as co-

managers of the community.  The Harbaughs live away, and typically visit Carriage Estates only

occasionally, around once a month.

On October 28, 2015, Amy Taylor and her then-husband, Garry Taylor executed a lease

for a space at the Carriage Estates manufactured housing community.  Carriage Estates is an

adult community, and its Community Rules restrict occupancy to persons 55 years of age or

older.  A mobile home had been installed on the lot the Taylors leased, which the Taylors had

purchased for the sum of $56,000.

**B.      Amy Taylor's Disability.**

Prior to leasing a lot at Carriage Estates Amy Taylor had been diagnosed with several

health conditions, including multiple sclerosis.  By the early fall of 2017, Ms. Taylor concluded

that she would need a caregiver to help her with meal preparation, using the toilet, bathing, and

PLAINTIFF'S TRIAL BRIEF - Page 8 (2:19-cv-01761-MJP)

to help her up after she had fallen.  Garry Taylor was unable to provide all the help she needed because of his own health conditions.

**C.      Mr. Farrington Selected as Caregiver.**

Ms. Taylor asked her grandson, Ethan Farrington, to provide care for her, and help with day-to-day activities in September, 2017.  Mr. Farrington had experience taking care of his invalid father and had previously given assistance to Ms. Taylor.  Amy Taylor knew that she would need help with bathing and using the toilet and it was critical to her to have a family member provide help, and not a stranger that she would be uncomfortable with.  Mr. Farrington lived nearby with his mother, and Mr. Farrington visited often.

**D.      Amy Taylor's Efforts to Have Mr. Farrington Approved by Defendants.**

In late September, 2017, the Taylors advised Defendants that Mr. Farrington would serve as a caregiver for Ms. Taylor. On October 3, 2017, Ms. Harbaugh told Ms. Taylor that it would be necessary for Ms. Taylor to get a note from her doctor with an approved plan of treatment and provide that to Carriage Estates; that Mr. Farrington would have to fill out a form and be screened; and that once the screening was done and approved, he would be required to sign a caregiver agreement. Ms. Taylor told Ms. Harbaugh that she needed Mr. Farrington's assistance immediately.  Ms. Harbaugh memorialized the discussion in a letter to the Taylors.

Ms. Taylor's physician, Teackle Martin, M.D., wrote a letter stating Ms. Taylor would need a caregiver, and identified Mr. Farrington as her caregiver; this letter was forwarded to Ms. Harbaugh.  Ms. Harbaugh called Ms. Taylor on October 9, 2017 to complain that Mr. Farrington was already providing care before the screening was completed.  Ms. Taylor explained once again that it was important for her to receive care to avoid injury.  Ms. Harbaugh also

PLAINTIFF'S TRIAL BRIEF - Page 9 (2:19-cv-01761-MJP)

complained that Ms. Taylor had not provided a plan of treatment prepared by her doctor. Ms. Taylor subsequently received a letter from Ms. Harbaugh describing their conversation. Mr. Farrington completed the screening forms on October 11, 2017. The investigator that Defendants hired delayed performing the screening for several weeks.

During this time Garry Taylor asked his doctor, Al Johnson, MD, to write a note explaining that Garry Taylor would not be able to care for Amy Taylor as he had done in the past due to Garry Taylor's own health problems; Dr. Johnson's letter was forwarded to Ms. Harbaugh. To satisfy Ms. Harbaugh's demand that a plan of treatment be provided to Defendants, another of Amy Taylor's physicians, Dr. Rico Romano, wrote a letter dated October 26, 2017, describing the conditions that Ms. Taylor had been diagnosed with, and the types of assistance her caregiver was to provide, and included a plan of care. This letter included personal and embarrassing information and was forwarded to Defendants.

## E.   Defendants' Rejection of Mr. Farrington

On November 13, 2017, the Taylors were notified by Defendants that Mr. Farrington's application to serve as Ms. Taylor's caregiver had been rejected based on information contained in a consumer-credit report. The letter that accompanied the denial also alleged that an approved plan of treatment had not been done. The letter went on to state that Ms. Harbaugh had no assurance that Mr. Farrington would comply with the Carriage Estate Community Rules.

## F.   The Eviction Notices.

On November 27, 2017, Mr. Hastings served Ms. Taylor with a document entitled a "3-Day Notice to Quit," addressed to Ethan Farrington. The notice alleged that the Taylors had transferred their lease without the approval of Carriage Estates. The Taylors had done no such

PLAINTIFF'S TRIAL BRIEF - Page 10 (2:19-cv-01761-MJP)

thing.  On December 15, 2017, Mr. Hastings served Ms. Taylor another "3-Day Notice to Quit." The notice was directed to the Taylors and Ethan Farrington and directed the Taylors to quit the premises within 3 days.  The notice to quit required the Taylors to move their mobile home from Carriage Estates within 3 days; it takes a month or two to move a mobile home, such as the one owned by the Taylors, into Carriage Estates.

On January 11, 2018, the Taylors filed a housing discrimination complaint with the Washington State Human Rights Commission.  Shortly thereafter, on January 18, 2018, Ms. Harbaugh sent a letter to Mr. and Ms. Taylor, explaining that "it was not our intent to evict you when [eviction] notices were served but to get you to abide by the rules of Carriage Estates. . " That letter went on to state that the Taylors had cleaned up their lot, but that the Taylors still had a family member (Mr. Farrington) living with them who did not meet the minimum age requirements and had not been approved as a caregiver.

## ARGUMENT

### A.   The Conduct That Plaintiff Was Subjected To Establishes A Violation Of The Fair Housing Act And The Washington Law Against Discrimination.

To prove her housing discrimination claim, Ms. Taylor must produce direct or circumstantial evidence that demonstrates that a discriminatory reason motivated Defendant's decision to deny Mr. Farrington from serving as Ms. Taylor's caregiver, and that Ms. Taylor was adversely affected in some way.  *Pac. Shores Props. v. City of Newport Beach*, 730 F.3d 1142, 1158 (9th Cir. 2013) (*quoting McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir.2004)).  A discriminatory purpose need not be the only motivating factor.  *See, e.g., Robinson v. 12 Lofts Realty, Inc.,* 610 F.2d 1032, 1042–43 (2d Cir. 1979).  The jury may take into account a variety of factors in deciding if Ms. Taylor has met her burden of proof, including

Thomas Law Group, Inc.
431 Sioux Dr., Ste. "A"
Mount Vernon WA 98273
(360) 990-8350
scott@scottgthomaslaw.com

circumstantial evidence illuminating background events leading up to Defendant's decision; the

historical background of Defendant's decision and whether it creates a disparate impact; the

Defendant's departure from normal procedures leading up to and in making its decision; a clear

pattern of behavior based on unexplained grounds; and others. *Ave. 6E Investments, LLC v. City of*

*Yuma, Ariz.*, 818 F.3d 493, 504 (9th Cir. 2016).

Here, Ms. Taylor had Mr. Farrington continue to provide her with necessary care before

he had been approved by Defendants, and did not immediately accede to Defendants demand

that she provide Defendants with her health care plan.  Moreover, the Defendants had been

presented with several complaints by the Taylor's next-door neighbors at Carriage Estates.

Defendants were motivated to resolve this difficulty by having the Taylors move out of Carriage

Estates.  Instead of providing Mr. Farrington with a caregiver application for screening purposes,

Defendants gave him an application for tenancy.  Then, Defendants rejected him based on his

credit history.   And although Defendants are expected to argue that Mr. Farrington could not

follow the community rules, most of the rule violations had nothing to do with Mr. Farrington or

were quickly resolved when they became known.  Finally, it was not until after Ms. Taylor

disclosed her disability that Defendants threatened to evict her.  In sum, Defendants took steps to

discriminate against Ms. Taylor by effectively making her home unavailable and thus leveraging

her disability against her. See 42 U.S.C. § 3604(f)(1)(A).

**B.    Plaintiff Will Prove That Defendant Refused to Make a Reasonable Accommodation.**

Housing discrimination includes "a refusal to make reasonable accommodations in rules,

policies, practices, or services, when such accommodations may be necessary to afford [a

disabled] person equal opportunity to use and enjoy a dwelling...." 42 U.S.C. § 3604(f)(3)(B); 24

Thomas Law Group, Inc.
431 Sioux Dr., Ste. "A"
Mount Vernon WA 98273
(360) 990-8350
scott@scottgthomaslaw.com

C.F.R. § 100.204.  To prevail on a reasonable accommodation claim, a plaintiff must prove: (1) that the plaintiff is handicapped; (2) that the defendant knew or should reasonably be expected to know of the handicap; (3) that accommodation of the handicap may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation is reasonable; and (5) that defendant refused to make the requested accommodation. *Dubois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006), *cert. denied*, 549 US 1216 (2007).

In this case, Ms. Taylor will introduce evidence meeting each of these factors.  To date, the only significant challenge that has been raised by Defendants is to the "reasonableness" element.  An accommodation is reasonable under the FHA when it imposes no fundamental alteration in the nature of the program or undue financial or administrative burdens.  *Giebeler v. M & B Associates*, 343 F.3d 1143, 1157 (9th Cir. 2003).  Defendants have asserted that Mr. Farrington was not a reasonable choice for Ms. Taylor to have made, because his application was inadequate and because he had a history of rule violations.  Amy Taylor, Garry Taylor, Ethan Farrington, and Mr. Farrington's mother, Melinda will all testify that Mr. Farrington was living with his mother at the time Defendants claim that Mr. Farrington was living with Mr. and Ms. Taylor, and was taking care of Ms. Taylor only when he was not working.  Whereas Defendants are expected to assert that Ms. Taylor's daughter would have been a more appropriate choice as a caregiver, there is nothing to distinguish her past actions from those of Mr. Farrington other than Mr. Farrington provided necessary care to Ms. Taylor before he had been rejected by Defendants.

Thomas Law Group, Inc.
431 Sioux Dr., Ste. "A"
Mount Vernon WA 98273
(360) 990-8350
scott@scottgthomaslaw.com

Even more so, Defendants had an affirmative duty to open a dialogue with Ms. Taylor to explore ways in which Mr. Farrington could be approved as Ms. Taylor's caregiver, or what other accommodations might be available. *Jankowski Lee & Assocs. v. Cisneros*, 91 F.3d 891, 895 (7th Cir. 1996) ("if a landlord is skeptical of a tenant's alleged disability or the landlord's ability to provide an accommodation, it is incumbent upon the landlord to request documentation or open a dialogue.")  Defendants failed to do so.

**C.     Plaintiff will Prevail in Her Claim of Retaliation.**

The FHA makes it unlawful to coerce, intimidate, threaten, or interfere with the exercise of any right protected by the Act  42 U.S.C. § 3617.  To prove a claim of retaliation, a plaintiff must show that (1) she was engaged in protected activity; (2) she suffered an adverse action in the form of coercion, intimidation, threats, or interference; and (3) circumstantial evidence exists of a causal link between the two.  *Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001).  Section 3617 violations may be shown absent other violations of the FHA.  *See, e.g., Hidden Vill. LLC v. City of Lakewood, Ohio*, 734 F.3d 519, 528–29 (6th Cir. 2013) ("Section 3617 nowhere says that it comes into play only when a violation of one of these other sections has also occurred.").

"Whether hostile environment harassment exists depends upon the totality of the circumstances." 24 CFR § 100.600(a)(2)(i).  The factors to be considered include the nature of the conduct, the context in which the incident(s) occurred, the severity, scope, frequency, duration, and location of the conduct, and the relationships of the persons involved.  *Id*.  Whether unwelcome conduct is sufficiently severe to create a hostile environment is evaluated from the perspective of a reasonable person in the aggrieved person's position.  *Id*.

Thomas Law Group, Inc.
431 Sioux Dr., Ste. "A"
Mount Vernon WA 98273
(360) 990-8350
scott@scottgthomaslaw.com

The evidence in this case will show that Ms. Taylor sought approval from the Defendants to have Mr. Farrington serve as her caregiver, and complied with all of Defendants' requests for information as to Mr. Farrington.  After delaying a decision on Mr. Farrington for over a month, and placing Ms. Taylor in a holding pattern during that time all the while demanding that Mr. Farrington not provide care to Ms. Taylor, Defendants' finally rejected Mr. Farrington on irrelevant reasons.  Shortly thereafter, Ms. Taylor was served with eviction notices near the holidays.  This is outrageous conduct, which the jury will find constitutes retaliation.

## VI.   DAMAGES.

In this action, Ms. Taylor seeks various remedies available to her under 42 U.S.C. § 3613 including, *inter alia*, compensatory damages for mental anguish and emotional distress.[1]  Ms. Taylor does not seek punitive damages, or injunctive relief.  In an action under the FHA, if a plaintiff establishes actual damages, the Court is required to award compensatory damages. *United States v. City of Hayward*, 36 F.3d 832, 839 (9th Cir. 1994) (citations omitted). Compensatory damages need not be determined with certainty, although they may not be based upon "mere speculation or guess."  *Silver Sage Partners, LTD v. City of Desert Hot Springs*, 251 F.3d 814, 824 (9th Cir. 2001) (*quoting Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555 (1931) ).   The Ninth Circuit will not reverse an award for damages "unless it is clearly unsupported by evidence, or it shocks the conscience." *Simeonoff v. Hiner*, 249 F.3d 883, 893 (9th Cir. 2001).

---

[1]Plaintiff will also seek an award of costs, including a reasonable attorneys' fee, and respectfully reserves the right to make an application for such an award following the entry of final judgment.  *See* 42 U.S.C § 3613(c)(2) and Fed. R. Civ. P. 54(b)(2).

Thomas Law Group, Inc.
431 Sioux Dr., Ste. "A"
Mount Vernon WA 98273
(360) 990-8350
scott@scottgthomaslaw.com

In this action, Ms. Taylor was constructively evicted from her home.  She sold the home to the Defendants for a fraction of its value in order to escape the discriminatory behaviors engaged in by Defendants.  Ms. Taylor will ask the jury to award her compensatory damages based upon the reduced value of her home that she was constructively evicted from, mental anguish and emotional distress.  Moreover, in this type of case, the testimony of a plaintiff alone provides a sufficient basis for a jury to award damages for mental anguish and emotional distress and punitive damages.  *Courtney v. City of New York*, 20 F. Supp. 2d 655, 661 (S.D.N.Y. 1998) (holding that a plaintiff "is not required to corroborate [her] testimony regarding mental anguish in order to support a compensatory damage award." (*citation omitted*)).

## CONCLUSION

The testimony at trial shall establish that Ms. Taylor's rights were violated, and she should be fully compensated for such violations.

**DATED:** March 30, 2021

BY:   _s/ Scott G. Thomas_
Scott G. Thomas, WSBA# 23079
THOMAS LAW GROUP, P.S.
431 Sioux Dr., Ste. "A"
Mt. Vernon, WA 98273
Attorneys for Plaintiff

Thomas Law Group, Inc.
431 Sioux Dr., Ste. "A"
Mount Vernon WA 98273
(360) 990-8350
scott@scottgthomaslaw.com